IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATASHA TURNER, | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-1897-S-BK |
| | § | |
| BANK OF AMERICA, NA, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 22, this case has been referred to the undersigned magistrate judge for pretrial management. The Court now considers *Defendant's Motion for Summary Judgment.* Doc. 28. For the reasons that follow, the motion should be **GRANTED IN PART**.

## I. PROCEDURAL HISTORY

Plaintiff initiated this then-counseled action in August 2022, stemming from an incident when Defendant Bank of America, NA ("BANA") placed a lengthy hold on a large check she deposited. *See* Doc. 1, *passim*. Plaintiff alleges that, on Saturday, April 23, 2022, she received a $205,000 check as part of a legal settlement and proceeded to one of BANA's branches to deposit the funds into her personal account. Doc. 1 at 2. The teller asked Plaintiff "peculiar questions" regarding the source of the funds and the validity of the check, stating, "[w]ho would issue YOU a check for an amount like this, and for what reason?" Doc. 1 at 2 (emphasis in original). Plaintiff alleges "upon information and belief," that the teller flagged her check as fake and the funds as fraudulent solely because she is African-American. Doc. 1 at 2-3.

On April 25, 2022, Plaintiff received an email from BANA informing her that the entire $205,000 would be placed on hold. Doc. 1 at 3. BANA also closed Plaintiff's bank accounts. Doc. 1 at 3. After repeated unsuccessful attempts to straighten out the situation, BANA finally released the funds to Plaintiff on June 24, 2022, but withheld $500, which it has refused to return. Doc. 1 at 3. Plaintiff brought claims against BANA for (1) violation of her rights under 42 U.S.C. § 1981; (2) common law conversion; (3) violations of the Electronic Funds Transfer Act (the "EFTA") and the Expedited Funds Availability Act (the "EFAA"); and (4) deceptive trade practices in contravention of Texas Business and Commerce Code § 17.50(a) (the "DTPA").[1] Doc. 1 at 5-9. Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure with respect to all of Plaintiff's claims and her demands for a jury trial, punitive damages, and attorneys' fees. Doc. 28.

## II. APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citation omitted).

---

[1] While Plaintiff cited to section 17.505(a), this appears to be a scrivener's error as she quotes from section 17.50(a), which is the substantive DTPA statute. Doc. 1 at 8-9.

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). The Court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment, but a party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016) (internal alterations omitted) (quoting *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)).

## III. UNDISPUTED FACTS

In support of its motion, BANA has submitted documents demonstrating the following undisputed facts[2]: In December 2021, Plaintiff opened a checking account (the "Account") with BANA. Doc. 28-2 at 5. Plaintiff contemporaneously executed a Signature Card which provides, in relevant part, as follows:

> By signing below, I/we acknowledge, agree, and consent:
>
> This account is and will be governed by the terms and conditions set forth in the account opening documents, including the Deposit Agreement and Disclosures and the Business Schedule of Fees and I/we are in receipt of these documents.
>
> The Bank may change these documents at any time by adding new terms, or deleting or amending existing terms. The Deposit Agreement includes a provision for jury trial waiver or reference to a judicial referee.

---

[2] While Plaintiff claims to have submitted a Declaration in support of her response to BANA's motion, Doc. 35 at 6, no such filing appears in the record.

Doc. 28-2 at 5.

In turn, the Deposit Agreement provides in part:

This Deposit Agreement and Disclosures, the applicable Schedule of Fees, the signature card and other account opening documents for your account are part of the binding contract between you and us (this "Agreement") for your deposit account and your deposit relationship with us. They contain the terms of our agreement with you. Please read all of these documents carefully.

Doc. 28-2 at 9 (emphasis omitted).

The Deposit Agreement also states that, while BANA's general policy is to make funds from check deposits available by the next business day, in some cases BANA "[m]ay not make all of the funds that [Plaintiff] deposit[s] by check available to [Plaintiff] by the first business day after the day of [Plaintiff's] deposit." Doc. 28-2 at 25. The Deposit Agreement specifically provides that BANA may delay the availability of funds deposited by check "for a longer period" if:

• We believe a check you deposit will not be paid.

• You deposit checks totaling more than $5,525 on any one day.

Doc. 28-2 at 25. A decision to delay the availability of funds requires BANA to notify the account holder of such and state when the funds will be available, which is "generally . . . no later than the seventh business day after the day of [the] deposit." Doc. 28-2 at 25. The Deposit Agreement also contains a jury trial waiver and precludes the availability of punitive damages and attorneys' fees. Doc. 28-2 at 31, 35, 44.

On April 23, 2022, Plaintiff visited a BANA branch to deposit a check for $205,000 (the "Check") drawn from the Citibank account of "Gallagher Bassett Services Inc for Starr Indemnity & Liab Co" ("Gallagher Bassett"). Doc. 28-2 at 46. At the time, the three prior months reflected Account balances of $621.84, $0.48, and negative $183.45, respectively. Doc.

4

28-2 at 47, 51, 57. Funds from the Check posted to the Account two days later, on Monday, April 25, 2022. Doc. 28-2 at 69.

The same day, BANA notified Plaintiff in writing that a temporary hold had been placed on the deposit because "check specific information indicates [the] item may be returned," and funds would be available on May 4, 2022. Doc. 28-2 at 89. Shivani Kadam, a BANA employee who resided in India at all relevant times, initiated the temporary hold. Doc. 28-2 at 3 (Decl. of G. Coutz). On May 4, 2022, a representative from Gallagher Bassett informed BANA that the Check might be "a fake" and "the claim number associated with the Check was not recognized." Doc. 28-2 at 3 (Decl. of G. Coutz). On May 6, 2022, BANA closed the Account and four days later marked the check "Refer to Maker," i.e., Citibank. Doc. 28-2 at 46, 69. On May 11, 2022, a "return item chargeback" was made on the Account for $205,000. Doc. 28-2 at 75. Finally, on June 24, 2022, BANA credited a "miscellaneous adjustment" to the Account for $205,000. Doc. 28-2 at 81. By the end of the month, a total of $204,803.56 had been withdrawn or transferred, including an "account closing transaction" fee of $500, and the Account was closed again. Doc. 28-2 at 81.

## IV. ANALYSIS

### A. Abandoned Claims

If no response whatsoever is filed to a motion for summary judgment, the court cannot enter a "'default' summary judgment." *Boyd v. Fam. Dollar Stores of Texas, LLC*, No. 3:22-cv-1368-D, 2023 WL 4141052, at *1 (N.D. Tex. June 22, 2023). However, where a response is filed that does not address particular claims upon which summary judgment is sought, those claims can be deemed abandoned. *See Harris v. City of Schertz*, 27 F.4th 1120, 1123 (5th Cir.

2022) ("On appeal, the City argues that Harris's failure to respond in district court to its summary judgment motion's argument about age discrimination means that the claim was abandoned. It has authority on its side.") (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)); *accord McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 348 (2023).

Here, Plaintiff filed a response but did not oppose Defendant's motion for summary judgment on her EFTA claim or her demands for a jury trial, attorneys' fees, and punitive damages. BANA is thus entitled to summary judgment on these abandoned claims.

### B. Section 1981 Claim

Section 1981 prohibits private parties from engaging in racial discrimination in the making, enforcing, performance, modification, and termination of contracts. *See* 42 U.S.C. § 1981. BANA argues that Plaintiff cannot establish a prima facie case of intentional discrimination because her allegations that BANA discriminated against her based on her race are conclusory and unsupported by evidence. Doc. 28-1 at 16. In support, BANA points to the fact that the employee who initiated the hold lived in India, and the teller who assisted Plaintiff with the Check avers that she did not mention Plaintiff's race during the transaction nor did the supervisor who approved the deposit. Doc. 28-1 at 17; Doc. 28-2 at 3 (Decl. of G. Coutz); Doc. 28-3 at 2 (Decl. of K. Gorshane). Defendant maintains that the decision to place funds on hold and the duration of the hold are based on a variety of factors such as how long the account has been open, the average balance history, the amounts of prior deposits, and the amount of the check deposited. Doc. 28-2 at 3 (Decl. of G. Coutz). Plaintiff responds that the BANA teller's questions about the source of the funds make it "reasonable to conclude that the sole reason why they held her funds for 62 days was the fact that she was African-American." Doc. 35 at 15-16.

"[A] plaintiff bears the burden of showing that race was a but-for cause of [her] injury" to establish a section 1981 claim. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). Put differently, "a plaintiff must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Id.* at 1019. Nevertheless, "[a] non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (footnote and internal quotation marks omitted). Here, Plaintiff has not met her burden as she does not point to any evidence controverting BANA's sworn declarations that race was not a factor in its decision to place a hold on the Check. Accordingly, BANA is entitled to summary judgment on this claim.

**C. Conversion**

BANA next argues that Plaintiff's claim for conversion is precluded by the economic loss doctrine, and, in any event, she cannot establish damages because the funds were returned to her. Doc. 28-1 at 18-20. Plaintiff asserts that, notwithstanding BANA's 62-day delay in releasing the funds, it inexplicably retained $500. Doc. 35 at 16. Additionally, Plaintiff maintains that "BANA's contract with Plaintiff is an adhesion agreement and should not be enforced," but she does not address the applicability of the economic loss rule. Doc. 35 at 11 (emphasis omitted).

*1. The Deposit Agreement*

The Texas Finance Code provides that:

> A deposit contract between a bank and an account holder is considered a contract in writing for all purposes and may be evidenced by one or more agreements, deposit tickets, signature cards, or notices as provided by Section 3.402, or by other documentation as provided by law.

TEX. FIN. CODE § 34.301(a); *see also Canfield v. Bank One, Texas, N.A.*, 51 S.W.3d 828, 836 (Tex. App.—Texarkana 2001) (stating that deposit agreements "are enforceable as a contract between the parties.") (citation omitted). Plaintiff has not cited any legal authority to support her argument that the Deposit Agreement is an adhesion contract; and, in any event, adhesion contracts are not automatically unconscionable and unenforceable in Texas. *ADC Rig Services, Inc. v. JPMorgan Chase Bank, N.A.*, 641 F. Supp. 2d 617, 623 (S.D. Tex. 2009) (citing *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 608 (Tex. 2005)). Here, Plaintiff signed the Signature Card and has not demonstrated why she should not be bound by the terms of the Deposit Agreement. *See id.* (rejecting plaintiffs' arguments that their bank deposit agreements were unenforceable adhesion contracts).

### 2. The Economic Loss Rule

Plaintiff's conversion claim is also barred by the economic loss rule. That doctrine "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citations omitted). The economic loss rule, however, does not apply when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Id.* (citations omitted). As the Supreme Court of Texas has explained:

> The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.

*Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) (quoting *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)).

The rule can apply to conversion claims in Texas. *See Lincoln Gen. Ins. v. U.S. Auto Ins. Servs.*, 787 F.3d 716, 725 (5th Cir. 2015) (holding that the economic loss rule applied where the conversion claims, based on transferring expiring insurance policies and inflating commissions, stemmed directly from alleged violations of the parties' contract). However, "when certain legal relationships exist between contracting parties, the law may impose affirmative duties that are separate and apart from the contractual promises made between those parties," giving rise to both contract and conversion claims based on the same facts. *Natl. Union Fire Ins. Co. of Pittsburgh, Pa. v. Care Flight Air Ambul. Serv., Inc.*, 18 F.3d 323, 326 (5th Cir. 1994). For example, in *Vickery v. Texas Carpet Co.*, 792 S.W.2d 759, 762-63 (Tex. App.—Houston [14th Dist.] 1990), the court held the plaintiff could sue for both breach of contract and conversion when the defendants failed to pay an invoice for carpet installation and then sold the building without permitting the plaintiff to retrieve the carpet.

In assessing whether the economic loss rule applies in a given case, the court must "look to the origin of the duty owed and the nature of the resulting injury." *Nat'l Union Fire Ins. Co.*, 18 F.3d at 326 (citation omitted). Generally, if a defendant's conduct breaches an agreement between the parties but does not breach an affirmative duty imposed outside the contract, the plaintiff cannot recover on a conversion claim. *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *see also Castle Texas Prod. Ltd. Partn. v. Long Trusts*, 134 S.W.3d 267, 274 (Tex. App. —Tyler 2003) ("[I]n the absence of independent injury, if a contract spells out the parties' respective rights regarding a particular matter, the contract, not common law tort principles, governs any dispute about that matter.") (citation omitted). In this case, Plaintiff's conversion claim arises out of BANA's duty to disburse check proceeds under the Deposit Agreement, and it is thus barred by the economic loss doctrine. *See Upper Valley Aviation v. Mercantile Nat. Bank*, 656

9

S.W.2d 952, 955 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ("A bank deposit ordinarily creates a debtor/creditor relationship and the bank's duty to disburse the funds according to the depositor's instructions arises from the depository contract.").

### 3. The Claim Fails on the Merits

Even if the economic loss rule did not apply, Plaintiff's claim still fails on the merits. "Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal citations and quotation marks omitted). Here, however, there is no evidence to suggest Plaintiff intended to keep the Check segregated from her other funds when she deposited it into the Account. Further, because any alleged error on BANA's behalf may be discharged by the payment of money generally, a claim for conversion will not lie. *See Middaugh v. InterBank*, 528 F. Supp. 3d 509, 550 (N.D. Tex. 2021) (finding the plaintiffs' conversion claims were barred as a matter of law because the alleged indebtedness could "be discharged by payment of money generally"). BANA is thus entitled to summary judgment on Plaintiff's conversion claim.

### D.  EFAA

The EFAA governs the availability of bank-deposited funds, including checks. *See generally* 12 U.S.C. § 4001, *et seq*. As is clear from its title, the purpose of the EFAA is to "provide faster availability of deposited funds." *Haas v. Com. Bank*, 497 F. Supp. 2d 563, 565 (S.D.N.Y. 2007) (citation omitted). Typically, depositary banks must make check funds available by the next business day if the check is deposited in person into the payee's own account. *See* 12 C.F.R. § 229.10(c)(1)(iii). A depositary bank may delay the availability of such

funds for a "reasonable period" if there is "reasonable cause" to doubt a check's collectability—the exception BANA invokes. *See* 12 C.F.R. § 229.13(e), (h).

When a bank extends the time when funds will be available for withdrawal based on that exception, it must notify the depositor in writing at the time of the deposit to explain, *inter alia*, why the exception was invoked and when the funds will be made available. 12 C.F.R. § 229.13(g)(1)(i). Additionally, the depositary bank must retain a record of each notice provided if it applies the "reasonable cause" exception at issue here, "together with a brief statement of the facts giving rise to the bank's reason to doubt the collectibility of the check." 12 C.F.R. § 229.13(g)(5). If a payee deposits a check into her own account in person at the bank, the longest "reasonable period" for which a bank may hold the funds is nine business days. *See* 12 C.F.R. §§ 229.13(h)(2), (4) (cross-referencing 12 C.F.R. § 229.12, which provides for the availability of the funds "not later than the second business day following the banking day on which funds are deposited"). While a longer extension may be reasonable, "the bank has the burden of so establishing." 12 C.F.R. § 229.13(h)(4).

BANA argues that Plaintiff's EFAA claim fails because it timely notified Plaintiff of the hold on the Check and "estimated" the funds would be available on May 4, 2022. Doc. 28-1 at 22. BANA additionally asserts it had reasonable cause to extend the hold because the Check's collectability was questionable following Gallagher Bassett's statement that it was likely fraudulent. Doc. 28-1 at 22-24. Plaintiff responds that BANA violated the EFAA by failing to (1) provide notice why it was denying access to the funds, (2) notify her when the funds would be available, and (3) make the funds available in a reasonable amount of time. Doc. 35 at 17.

Notwithstanding BANA's initial notice to Plaintiff that a hold had been placed on the Check, at minimum, there exists a genuine question of material fact regarding whether the

11

ultimately extended hold made Plaintiff's funds available within a "reasonable period." While there is a dearth of case law addressing what constitutes a "reasonable period," BANA points to no authority supporting its apparent position that a 41-business day hold on the Check is "reasonable." *Cf. Ma v. U.S. Bank, Nat'l Ass'n*, 2023 IL App (1st) 221556-U, 2023 WL 6258532 , at *1 (Ill. Ct. App. Sept. 26, 2023) (noting that the plaintiff was awarded statutory damages when the defendant bank held her check funds for 43 calendar days "because the bank was not timely in resolving its account hold."). BANA thus has not met its burden of establishing that the extended hold on the Check was reasonable. 12 C.F.R. § 229.13(h)(4). Moreover, while BANA ultimately released the majority of the funds, it withheld $500 with no apparent explanation. For the above reasons, Defendant is not entitled to summary judgment on Plaintiff's EFAA claim.

### E. DTPA

Plaintiff alleges in her complaint that BANA "violated the DTPA by breaching their agreement with Plaintiff to accept her deposits, to allow her access to deposited funds, to not disparage her as a criminal and to not mark her account as fraudulent when it was not true." Doc. 1 at 9. BANA asserts that Plaintiff's DTPA claims are preempted by the Deposit Agreement, precluded by the economic loss rule, and Plaintiff is not a "consumer" within the meaning of the DTPA. Doc. 28-1 at 24-28. Plaintiff responds only that the Deposit Agreement is an unconscionable adhesion contract. Doc. 35 at 17-18. The Court has already rejected that argument. *See supra*. Moreover, Plaintiff's DTPA claims are barred by the economic loss doctrine for the reasons discussed above. *See also Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (stating that "an allegation of a mere breach of contract, without more,

does not constitute a false, misleading or deceptive act in violation of the DTPA.") (cleaned up) (citation omitted). Accordingly, summary judgment is warranted on Plaintiff's DTPA claim.

## V. CONCLUSION

For the foregoing reasons, *Defendant's Motion for Summary Judgment*, Doc. 28, should be **GRANTED IN PART** to the extent that all of Plaintiff's claims should be dismissed with the exception of her claim under the EFAA.[3]

**SO RECOMMENDED** on January 3, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

---

[3] To date, Plaintiff's counsel has not designated new local counsel as required by Local Rule 83.10 and this Court's July 21, 2023 order. Doc. 31. Plaintiff's counsel is **ORDERED** to fully comply therewith within 14 days of the date of this recommendation.